IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CRIMINAL DIVISION

```
------------------------------------------------------ x
                                              )
IN THE MATTER OF                              )
THE SEARCH OF                                 )
        jesserbenton@gmail.com                )       Case No. 4:14-MC-36
                                              )
                                              )
------------------------------------------------------ x
```

**UNDER SEAL**

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO QUASH SEARCH WARRANT**

Roscoe C. Howard, Jr., Esq.
Meena T. Sinfelt, Esq.

*Attorneys for Jesse R. Benton*

Dated:  September 2, 2014

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................ 1

  A.  Allegations of Iowa State Ethics Violations & Kent Sorenson Investigation .................... 1

  B.  Federal Investigation and New Waldron Complaint to the FEC ......................................... 2

  C.  Grand Jury Subpoena and Proffer ..................................................................... 3

  D.  Revocation of Consent and Production of Documents ........................................................ 4

  E.  General Search Warrant to Google, Inc. ............................................................... 5

  F.  Search and Seizure Warrant to Google ............................................................... 6

III.  ANALYSIS ....................................................................................... 8

  A.  THE SEARCH AND SEIZURE WARRANT TO GOOGLE INC. SHOULD BE
      QUASHED FOR LACK OF PROBABLE CAUSE ............................................................ 9

    1.  The Seizure Warrant Was Issued Without Probable Cause Resulting in a General
        Search Warrant that is Overbroad and General. ......................................... 10

    2.  The Search and Seizure Warrant Should Be Quashed Pursuant to 18 U.S.C. §
        2704(b)(4) For Failure to Seek Communications Related to a Legitimate Investigation.
        ................................................................................................. 16

IV.   CONCLUSION .................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andresen v. Maryland,*
    427 U.S. 463, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976).........................................................11

*Groh v. Ramirez,*
    540 U.S. 551, 557, 124 S. Ct. 1284, 157 L.Ed.2d 1068 (2004) ..............................................10

*In the Matter of the Search of Black iPhone 4, S/N Not Available,*
    2014 U.S. Dist. LEXIS 36319, 2014 WL 1045812 (D.D.C. Mar. 11, 2014) .........................13

*In the Matter of the Search of Info. Assoc. with the Facebook Account Identified by the Username Aaron.Alexis That is Stored at Premesis Controlled by Facebook, Inc.,*
    2013 U.S. Dist. LEXIS 185850, 2013 WL 7856600 (D.D.C. Nov. 26, 2013) .......................13

*In the Matter of the Search of Info. Assoc. with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc.,*
    2014 U.S.Dist. LEXIS 52053, No. 14-228 (D.D.C. Apr. 7, 2014).............9, 10, 11, 12, 13, 14

*In re Search of Target Email Address,*
    Nos. 12-MJ-8119-DJW and 12-MJ-8191-DJW,
    2012 U.S. Dist. LEXIS 138465 (D. Kan. Sept. 21, 2012) ................................................10, 11

*Marron v. U.S.,*
    275 U.S. 192, 72 L. Ed. 231, 48 S. Ct. 74 (1974)..................................................................11

*U.S. v. Bickle,*
    2011 U.S. Dist. LEXIS 94921, 2011 WL 3798225 (D. Nev. July 21, 2011) .........................10

*U.S. v. Bowen,*
    689 F. Supp. 2d 6785 (S.D.N.Y. 2010)..................................................................................10

*U.S. v. Forrester,*
    512 F.ed 500 (9th Cir. 2008)..................................................................................................10

*U.S. v. LeBron,*
    729 F.2d 533 (8th Cir. 1984) .................................................................................................11

*U.S. v. Tamura,*
    694 F.2d 591 (9th Cir. 1982) .................................................................................................13

*U.S. v. Taylor,*
    764 F.Supp. 2d 230 (D. Me. 2011) ........................................................................................10

ii

*U.S. v. Warshak,*
    631 F.3d 266 (6th Cir. 2010) .................................................................................................10

*U. S. v. Zavala,*
    541 F.3d 562 (5th Cir. 2008) .................................................................................................10

## CONSTITUTION, STATUTES, & OTHER AUTHORITIES

U.S. CONST. AMEND. IV ................................................................................................7, 8, 10, 11

18 U.S.C. § 2703 ...............................................................................................................8, 17, 18, 19

18 U.S.C. § 2704..........................................................................................................................16, 19

18 U.S.C. § 2706 ............................................................................................................................. 8

18 U.S.C. § 2707 ............................................................................................................................. 17

Federal Rule of Criminal Procedure 41 ......................................................................................12

WAS:215083.9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CRIMINAL DIVISION

--------------------------------------------------- x
                    )

IN THE MATTER OF         )
THE SEARCH OF           )
       jesserbenton@gmail.com    )
                    )
                    )
--------------------------------------------------- x

**UNDER SEAL**

Case No. 4:14-MC-36

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
QUASH SEARCH WARRANT**

## I.      PRELIMINARY STATEMENT

Mr. Jesse R. Benton, interested party and the holder of the subject account of the above-captioned matter, hereby moves for an order to quash the warrant allowing the unlawful and unconstitutional search and seizure of his email account, jesserbenton@gmail.com, hosted by Google, Inc..  Mr. Benton's motion should be granted by this Court because the government lacks probable cause to either search or seize the items it describes in the search warrant served on Google, Inc. resulting in a general warrant which is strictly prohibited by the U.S. Constitution.  In addition, the search and seizure warrant served on Google is in violation of Section 2703(d) of the Stored Wire and Electronic Communications Act. In support of Mr. Benton's Motion to Quash Search Warrant, he submits the following Memorandum of Law.

## II.      FACTUAL BACKGROUND

### A.    Allegations of Iowa State Ethics Violations & Kent Sorenson Investigation

On February 18, 2013, Mr. Peter Waldron, former staff member of Bachmann for President ("BFP"), filed a complaint with the Federal Elections Commission (FEC) alleging that BFP made deliberate attempts to conceal payments to Iowa State Senator Kent Sorenson.  Ex. A,

Waldron FEC Complaint of Feb. 18, 2013.[1]  As a result of Waldron's allegations, the Iowa State Senate Ethics Committee commenced an independent investigation into the allegations that Sorenson received compensation for his involvement with the Bachmann campaign in violation of Iowa State Senate Ethics Rules. *See* Ex. B, Stipulated Statement of Facts at ¶¶ 20 - 21, Case No. 4:14-cr-103, ECF No.7.  On October 2, 2013, the state appointed investigators published their findings in the Iowa State investigation noting that Sorenson did take compensation from BFP through a consulting company and also noted that Sorenson appeared to have received compensation from Ron Paul's 2012 Presidential Election Campaign. *See* http://www.desmoinesregister.com/story/news/politics/2013/10/03/sorenson-resigns-from-senate/2913361/ (last accessed Aug. 29, 2014).

### B.        Federal Investigation and New Waldron Complaint to the FEC

At some point in 2013 or 2014, the U.S. Department of Justice commenced an investigation into Sorenson and the allegations surrounding his receipt of payments from the Bachmann and Paul campaigns.  On November 20, 2013, the FBI executed a search warrant on Sorenson's home.   *See* http://www.omaha.com/news/fbi-searches-home-of-former-iowa-state-sen-kent-sorenson/article_bc478b32-c881-5d61-91d3-aea70d65ed3e.html.   Mr. Ted Sporer, Sorenson's attorney at the time, publicly stated that it was a "very through federal criminal search warrant" and said the FBI was "looking for communications with a presidential campaign, or third parties working for a presidential campaign." *See* http://www.startribune.com/politics/national/234476391.html (last accessed Aug. 29, 2014).  On or around March 7, 2014, the FEC received an additional complaint from Waldron which now contained allegations that the Ron Paul for President Campaign ("RP2012") paid a bribe to

---

[1]     Counsel has been unable to obtain a signed copy of Mr. Waldron's complaint, presumably because it is a matter still under review by the FEC.

Sorenson to switch his support from BFP to RP2012. *See* Ex. C, Waldron FEC Complaint of Feb. 28, 2014.

       **C.**     **Grand Jury Subpoena and Proffer**

On June 23, 2014, Mr. Benton received a subpoena to testify before a grand jury in the Southern District of Iowa and to produce certain documents as described in Attachment A to the subpoena.  Ex. D, Benton Grand Jury Subpoena.  Prior to Mr. Benton's receipt of the grand jury subpoena, his counsel was aware that the government was interested in Mr. Benton's role in the efforts to allegedly hide payments to Sorenson from the FEC. Affidavit of Roscoe C. Howard, Jr. at ¶¶ 5-6.  As a result, Mr. Benton was instructed not to destroy or delete any documents that might be related to the government's investigation. *Id.* at ¶6.  While counsel for Mr. Benton arranged a date to testify before the grand jury, he also produced some email communications responsive to the subpoena. *Id.* at ¶ 7.  In addition, counsel for Mr. Benton continued to review documents under the control of Mr. Benton for responsiveness to the grand jury subpoena. *Id.* The government was informed that counsel would continue to provide responsive documents as they were discovered.  *Id.* at ¶ 19.

On July 21, 2014, Mr. Benton and his counsel travelled to Des Moines, Iowa where Mr. Benton was to give a proffer to the government that day and then testify before the grand jury the next day. *Id.* at ¶ 9.   Mr. Benton met with Department of Justice Attorneys Richard Pilger and Bobby Higdon, along with FBI Agents Karen Lostracco and Manik Sahaghian. *Id.* at ¶ 10. During Mr. Benton's proffer, his counsel informed the government of the vast number of emails[2] that Mr. Benton had in his Gmail account ([jesserbenton@gmail.com](mailto:jesserbenton@gmail.com)).  *Id.* at ¶¶ 12-13. Mr. Benton had his emails from his RP2012 account forwarded to his Gmail account, and used his

---

[2]    Mr. Benton pays for 40 GB of memory which equates to approximately 700,000 documents between 3 - 5 pages long each. Howard Aff. at ¶ 13.

Gmail account for his political consulting business as well as for personal emails. *Id.* at 12.  In response, the government asked Mr. Benton to sign an authorization that would give the government access to search his Gmail account. *Id.* at ¶ 13.   The government also indicated to Mr. Benton that since he had a Gmail account the authorization form from Google required Mr. Benton to indemnify Google for any action resulting from the consent. *Id.* at ¶ 14.  Mr. Benton's counsel inquired as to whether the government would use a "taint team"[3] to review the emails to avoid the review of privileged communications. *Id.* at ¶ 15.  Pilger indicated that the government would avoid privileged emails but did not comment on the use of a "taint team." *Id.*  Although concerned about the potential financial responsibility of indemnifying Google, Mr. Benton signed a "Consent to Search E-Mail Account" form in favor of the government. Ex. E, Benton Consent Form.   On July 22, 2014, Mr. Benton and his counsel again met with the same government representatives but did not testify before the grand jury.  Howard Aff. at ¶ 17.

### D.    Revocation of Consent and Production of Documents

The very next day after returning from Iowa, on July 23, 2014, Mr. Benton consulted with his counsel due to concerns about indemnifying Google and the government's lack of assent to using a taint team to review his email account.  *Id.* at ¶18. While it was clear that the government was investigating Mr. Benton's connection with Sorenson and RP2012, Mr. Benton worked for Senator Mitch McConnell's re-election campaign at the time and did not want the government having access to information related to McConnell's campaign and unrelated to the

---

[3]    "Taint teams" are regularly used within the Department of Justice and are made up of agents and/or attorneys not involved in the investigation who then review potentially privileged material before it is seen by the prosecution team.   After review, the taint team produces to the prosecuting team all materials that are responsive but not privileged.  Taint teams are used as a filter to review seized material without impugning an individual's attorney-client privilege (or other recognized privilege) by having its contents made known to the team that will handle the prosecution.   Both the government and the party that is subject to the search are provided an opportunity to challenge the taint team's determination before the trial court.

WAS:215083.9

current investigation.[4]  Accordingly, Mr. Benton's attorney informed the government that as of July 23, 2014, Mr. Benton was withdrawing his consent for the government to broadly search his Gmail account.  *Id.*; Ex. F, July 23-14, 2014 Correspondence between R. Howard and R. Pilger.[5] In an effort to cooperate with the government and still provide them access to Mr. Benton's emails, Mr. Howard made an alternative proposal in which Mr. Benton would continue to produce non-privileged, responsive emails and documents (including deleted items, sent items, and calendar items from the Gmail account) as he reviewed the Gmail account. Howard Aff. at ¶ 19.  Then if the government still believed it needed to have unfettered access to Mr. Benton's Gmail account, the issue of consent could be revisited.  *Id.* at ¶ 20.   The government confirmed Mr. Benton's revocation but noted that the revocation would not apply to any documents which the government had retrieved prior to his revocation of consent. *Id.* at ¶ 21.  In addition, the government refused to confirm its use of a taint team to avoid privileged communications and refused to provide a log of the documents which it retrieved prior to Mr. Benton's revocation. *Id.* at ¶ 22.

     **E.**     **General Search Warrant to Google, Inc.**

After July 24, 2014, Mr. Benton continued to fulfill his duty to the grand jury by producing responsive communications to the government.[6]  Mr. Benton never received any contact from the government stating that his responses were unnecessary or noting any problem with his responses.  Unbeknownst to Mr. Benton, the government had applied for a search

---

[4]    As of August 30, 2014, Mr. Benton resigned as Campaign Manager for Senator McConnell's re-election campaign. Howard Aff. at ¶ 32.

[5]    One document with the entire email string starting on July 23, 2014 and ending on July 24, 2014 has been provided to the court for completeness.

[6]    Mr. Benton continues, as of this filing, to review his email account for documents responsive to the grand jury subpoena and will be making future disclosures.

warrant for his Gmail account immediately after his revocation on July 24, 2014. Ex. G.  Then, the government immediately served it to Goggle on July 25, 2014. Howard Aff. at ¶ 26.

On August 18, 2014, Mr. Benton received notice from Google that it had received legal process (ref. 4:14-MJ-184) related to his email account and provided Mr. Benton with a copy of the search warrant. Ex. G, Aug. 18, 2014 Google Notice and Search Warrant.   Counsel for Mr. Benton immediately contacted Pilger and inquired as to why the government was seeking Mr. Benton's emails from Google when Mr. Benton himself was producing the emails to the government per the proposal of July 23, 2014. Howard Aff. at ¶ 26.  Pilger responded that the document was sealed and he would not confirm that it was a search warrant. *Id.* at ¶ 27.  Pilger said the reason for serving Google was that the government wanted to see items that may have been deleted and were not accessible to Mr. Benton. *Id.* It was abundantly clear with his description of what he was looking for that Pilger had no particular documents he and the FBI wanted to search for, but only wanted to go through all of Mr. Benton's email to make a determination if they believed there was something nefarious they could find.  Pilger indicated that Mr. Benton and his counsel's work in reviewing the Benton Gmail account would not duplicate the sealed process served on Google and he expected counsel to continue to provide responsive material pursuant to the grand jury subpoena. *Id.*

F.     **Search and Seizure Warrant to Google**

The warrant is riddled with errors, all of which render it constitutionally invalid. Initially, the search and seizure warrant received by Google states that the government is requesting to search a person or property located in the Southern District of Iowa. Ex. G.  Neither Google, nor Mr. Benton's email account are located anywhere in the State of Iowa.  Attachment B to the warrant contains two parts, "I. Information to be disclosed by Google, Inc. and GoDaddy, Inc. (the "Providers")" and "II. Information to be seized by the government." *Id.*  The

6

Fourth Amendment requires that the place to be searched be particularly described. U.S. CONST. AMEND. IV.  The government proceeded to serve Google in the state of California expecting the search to be carried out there on Google's servers.

The warrant then continues with more clauses clearly prohibited by the Constitution.  The first section of Attachment B instructs Google to disclose "*all e-mails associated with the Subject Accounts, including … copies of emails sent to and from the account, draft e-mails*" in addition to "*[a]ll records or other information … including, address books, contact and buddy lists, calendar data, pictures, and files*." *Id.*  The only limiting language in this clause that attempts to "particularize" the search is that Google should only produce all the emails during the time period "*March 1, 2011 through the present time*." *Id.*

The second section of Attachment B states that the government will seize certain information (later described) related to the various federal statutes cited "*occurring after January 1, 2011.*" *Id.*  The types of information the government will search Google's response for include: employment or consulting agreements between Grassroots Strategy, Inc. and anyone else; payments or withdrawals from the accounts of GSI by or from Sorenson or his wife; financial transactions between GSI, Sorenson and others; credit card transactions of Sorenson; tax preparation documents for Sorenson or GSI, etc. *Id.*  Not only does the warrant provide conflicting date ranges for items Google is to seize on behalf of the government, it also describes times and items that are particular to Sorenson and cannot possibly be associated with Mr. Benton by any set of facts.  This is discussed in more detail herein below.

WAS:215083.9

### III. ANALYSIS

The search and seizure warrant issued to Google is a general warrant which is overbroad in its terms and cannot be based upon probable cause.[7] Rather, the warrant is not only duplicative of Mr. Benton's current efforts to provide emails responsive to the government's description of the investigation in its grand jury subpoena, but also appears to be the government's reaction to Mr. Benton's revocation of his original consent to search is Gmail account. Regardless of the government's beliefs about Mr. Benton's role in the investigated activity, it must have probable cause for each category or type of information it seeks from Mr. Benton's email account.[8]

Given the information listed in Attachment B, it is clear that the government hastily applied for the instant warrant and did not narrowly tailor the request to those particular matters upon which they believe they have probable cause to search, as required by the U.S. Constitution and statute. U.S. CONST. Art. IV; 18 U.S.C. §2703(d). Accordingly, this Court should issue an order quashing the warrant and prohibit the government from having unfettered access to Mr. Benton's email account. Alternatively, this Court could order the government to narrow the scope of the warrant for only those items for which the government has established probable cause and order Google to perform a narrowly tailored search and provide *only* those documents described in the warrant[9], so that the government is not allowed to seize unrelated, irrelevant or

---

[7] Since the affidavit in support of the warrant has not been disclosed to Mr. Benton, his challenge to the search warrant is based solely upon information publicly available and his understanding of the investigation.

[8] Mr. Benton is not disputing the right of the government to get "things to be seized" from multiple sources. However, in this case, the government is asking Mr. Benton and Google to search the exact same account. The documents to be produced will be identical.

[9] Google can seek reimbursement from the government for its costs associated with performing the search and responding to the search warrant pursuant to 18 U.S.C. § 2706 "Cost reimbursement."

8

privileged information.[10]     *See In the Matter of the Search of Info. Assoc. with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc.,* No. 14-228, 2014 U.S. Dist. LEXIS 52053, No. 14-228 (D.D.C. Apr. 7, 2014).[11]  Mr. Benton has appended a copy of the recent opinion in *In re Search of Apple Email,* for ease of reference and because it is particularly instructive in the instant case.  Magistrate Judge John Facciola's opinion is of particular interest because his court issued three opinions within the past year relating to overbroad search and seizure warrant applications submitted by the government for electronic data held by third party providers.  In the opinion, Magistrate Judge Facciola discussed the constitutional concerns with the government's blind reliance on a Department of Justice manual regarding obtaining electronic evidence, and Magistrate Judge Facciola notes the government's insistence on repeatedly using the same language without revision for "Attachment A, Place to Be Searched" and "Attachment B" which contains a section titled "Particular things to be seized by the government." *Id.* at *4.  Interestingly, the blind reliance upon language suggested by the Department of Justice as noted by Magistrate Judge Facciola, is the same, unchanged boilerplate language found in the search and seizure warrant at issue in the instant case.  Judge Facciola found this language to be unconstitutional because it allowed a general search and seizure which was not supported by probable cause. *Id.*

###     A.     THE SEARCH AND SEIZURE WARRANT TO GOOGLE INC. SHOULD BE QUASHED FOR LACK OF PROBABLE CAUSE.

---

[10]   The Court should also order the government to use a taint team made up of attorneys and/or agents not related to the investigation so that privileged and irrelevant information may be kept from the prosecution team. Further, the Court should order that any information the taint team deems non-responsive or privileged, be destroyed or returned to Google within 60 days of the return of the search warrant. The government should not be allowed to keep unresponsive and/or privileged documents or copies of such.

[11]  There are no written opinions in the Eighth Circuit that could be located by counsel which address the government's warrant under this Act, therefore, the citations are from Districts who have had more of these warrants presented, leading to written opinions.

9

1.      The Seizure Warrant Was Issued Without Probable Cause Resulting in a General Search Warrant that is Overbroad and General.

The search and seizure warrant issued to Google should be quashed because the government does not have probable cause for the information it seeks and provided only an unconstitutional general warrant to Google.  Warrants must comply with the Fourth Amendment which states unambiguously "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. Art. IV; *see also Groh v. Ramirez,* (540 U.S. 551, 557, 124 S. Ct. 1284, 157 L.Ed.2d 1068 (2004).  Absent a showing of probable cause to believe there is a nexus between the criminal conduct alleged by the government and the information sought to be seized, the government is not entitled to search or seize all of Mr. Benton's email from January 2011(or March, as the attachment to the search warrant contains conflicting dates) to the present.

Many federal courts have held that emails produced to the government "are unquestionably seized" under the Fourth Amendment. *In re Search of Apple Email,* 2014 U.S. Dist. LEXIS at \*10*; see also id.* at \*5 (*citing Brower v. Cnty. Of Inyo,* 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L. Ed. 2d 628 (1989)); *In re Search of Target Email Address,* Nos. 12-MJ-8119-DJW and 12-MJ-8191-DJW, 2012 U.S. Dist. LEXIS 138465, at \*9 (D. Kan. Sept. 21, 2012); *U.S. v. Taylor,* 764 F. Supp. 2d 230, 237 (D. Me. 2011); *U.S. v. Bickle,* No. 10-cr-00565, 2011 U.S. Dist. LEXIS 94921, at \*22 (D. Nev. July 21, 2011); *U.S. v. Bowen,* 689 F. Supp. 2d 6785, 684 (S.D.N.Y. 2010).  Further, that "there is a reasonable expectation of privacy" in one's emails even when the emails were copied by the email provider and produced to the government.  *U.S. v. Warshak,* 631 F.3d 266, 285-88 (6th Cir. 2010); *see also U. S. v. Zavala,* 541 F.3d 562, 577 (5th Cir. 2008) (finding right of privacy in "private information, including emails" stored on defendant's mobile phone); *U.S. v. Forrester*, 512 F.3d 500, 511 (9th Cir. 2008) ("The privacy

interests in these two forms of communication [email and traditional mail] are identical."). The Fourth Amendment requires a valid warrant to describe the place to be searched with particularity in order to guide the executing officer. *Marron v. U.S.,* 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1974). In addition, it is the court's duty to prevent the issuance of general warrants which allow law enforcement to conduct exploratory rummaging of a person's property. *U.S. v. LeBron,* 729 F.2d 533, 536 (8th Cir. 1984); *see also Andresen v. Maryland,* 427 U.S. 463, 479, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)(finding courts must prevent "the seizure of one thing under a warrant describing another.").

a. <u>The government lacks probable cause to search and seize all the information listed in Attachment B.</u>

In the instant case, the government seeks the content of *all* of Mr. Benton's emails from Google with the only limiting factor being a date range. Attachment B to the warrant sets up a two-step process that not only allows the government to impermissibly seize all emails in the account including those for which it has not established probable cause *but also* search those same emails for information despite the fact that it has not established probable cause for such a search. The government is investigating the Bachmann and Paul campaigns and their association with Sorenson starting in 2011 through 2013. Mr. Benton was employed by RP2012 during those years and there is little doubt that the government will point to evidence to attempt to establish probable cause to seize communications sent and received in Mr. Benton's Gmail account during that time period. However, the government certainly cannot and surely has not shown probable cause to search or seize the contents of *all* his emails, including emails to and from Mr. Benton's account and deleted emails from Mr. Benton's account regardless of the subject or date. *See e.g. In re Search of Apple Email,* 2014 U.S. Dist. LEXIS at *16 (citing *In re Search of Target Email Address,* 2012 U.S. Dist. LEXIS at *9).

11

For example, the government is aware that since September 2012, Mr. Benton has been actively working on the re-election campaign of Senator Mitch McConnell.  Mr. Benton uses his Gmail account for business on the McConnell campaign.  If the court were to allow the current warrant to stand, Google would be forced to "disclose" communications that solely involve the McConnell campaign and then the government (in the two-step process outlined in Attachment B) would be able to search these same communications.  In addition, Mr. Benton receives personal email correspondence in the account the government now seeks to search, including information related to his medial health.  For this reason, Mr. Benton's counsel has spent, and continues to spend, countless hours combing through over 400,000 emails to eliminate irrelevant and privileged emails, so that only responsive emails are produced to the government.

While the affidavit supporting the instant warrant is sealed, unquestionably the government could not have probable cause to search or seize any communications related to Mr. Benton's work on the McConnell campaign.  Again, if the warrant were allowed to stand as is, it would allow the government to seize one thing (communications related to the McConnell campaign) under a warrant describing something else (payments to Sorenson and false statements to the FEC related to RP2012).  For the court to allow the government to require Google to "disclose" all such information as described in Attachment B would effectively decimate the Fourth Amendment and allow general rummaging. That is why what the government now has is a general warrant which is not countenanced by the Constitution.

b.      The Two-Step Process Authorized Under Federal Rule of Criminal Procedure 41 is Not Applicable In the Instant Case.

A narrow exception to the Fourth Amendment does allow for overly broad seizures, for practical purposes, when the information is too large or cumbersome to perform a targeted search, such as seizing a computer. *See In re Search of Apple Email,* 2014 U.S. Dist. LEXIS at

12

*17; *U.S. v. Tamura,* 694 F.2d 591, 595 (9th Cir. 1982).  However, the two-step process is only constitutional when the government provides search protocol explaining how the search will be performed to *only* search for information which probable cause exists and avoid files outside the scope of the warrant. *In re Search of Apple Email,* 2014 U.S. Dist. LEXIS at *18; *see also In the Matter of the Search of Info. Assoc. with the Facebook Account Identified by the Username Aaron.Alexis That is Stored at Premises Controlled by Facebook, Inc.,* 13-MJ-742, 2013 U.S. Dist. LEXIS 185850, at *6 (D.D.C. Nov. 26, 2013); *In the Matter of the Search of Black iPhone 4, S/N Not Available,* 14-235, 2014 U.S. Dist. LEXIS 36319, at *4 (D.D.C. Mar. 11, 2014).

The two-step process proposed by the government in the instant case is not constitutional. First, the two-step exception is for cases in which the government has no other alternative but to seize and search all data.  *See In re Search of Black iPhone,* 2014 U.S. Dist. LEXIS at *4.  Here the government does not need to use the two-step process because it has alternative means. Primarily, Mr. Benton himself is searching the email account to remove information outside the scope of the investigation and produce all other information.  In addition, Google itself certainly has the technology and means to perform the search instead of the government. Google can certainly use date limiters and particular search terms to narrow the information for which the government shows probable cause.  *In re Search of Apple Email,* 2014 U.S. Dist. LEXIS at *19-23.  Simple convenience or annoyance with Mr. Benton for revoking his consent, does not give the government permission to violate the Fourth Amendment. *Id.* at *25.

In addition, the government has not provided a detailed process by which its own agents would search the massive amount of information provided by Google in order to avoid information outside the scope of the warrant.  It is also notable that the government has not included any information as to what it will do with information it deems outside the scope of the

13

warrant.  However, it certainly cannot maintain that information or any of its copies, in any form

or fashion, without probable cause.  For this reason, other courts have ordered that where the

government presents a constitutional two-step process, it must destroy or return irrelevant

material.  *Id.* at *26-28 (noting that the potential for the abuse of the plain view exception in

regards to searching electronic data is great and reinforces a need for stringent searching

processes and the return of data).   Accordingly, the two-step exception is not applicable to the

instant case and the warrant should be quashed.  Alternatively, the Court should: (1) order the

government to narrow the scope of the search and seizure warrant; (2) then, order Google to

perform a search for responsive documents to produce to the government; and (3) order the

government to utilize a taint team unrelated to its current prosecution and investigation to review

the production by Google.

        c.      The attachment to the search warrant is from the previously
                           executed search warrant for Sorenson.

In the government's haste and it's over-reaction to the withdrawal of consent to Google

for Mr. Benton's email account, it drafted and submitted an application for a search warrant for

Mr. Benton's account that had as its attachment the attachment used for the search of Sorenson's

home in November 2013. *See* Ex. G.  A simple review of the described items to be searched and

seized demonstrates this and makes it manifest that the affidavit submitted for the search and

seizure of Mr. Benton's email account cannot possibly support a probable cause determination

for items that would most probably be in Sorenson's home.

The plain reading of Attachment B gives inconsistent instructions to Google on which

dates it must produce documents.  Section one of Attachment B, states that Google should

disclose "all records from March 1, 2011 through the present time." Ex. G at (f)(1).  Yet, section

two of the same attachment states that the government is looking for violations of the cited

statutes occurring after January 1, 2011 to the present. *Id.* Google is certainly not in a position to determine which date prevails and pertains to its compulsory disclosure, nor to determine for which date the government has established probable cause.  However, the facts to which Sorenson stipulated in his guilty plea state that "[f]rom in or about March 2011 …, Sorenson publicly worked for the election of Candidate A" (Bachmann). Ex. B at ¶8.  There can be little doubt that this is where the date came from in Attachment B, Section one and not from any showing of probable cause as to Mr. Benton's Gmail account.

Moreover, the simple terms of the information the government intends to search for under Section two of Attachment B, leads the reader to the unavoidable conclusion that Attachment B was meant for (and likely used in the search of ) Sorenson - not Mr. Benton.  For example, the government seeks communications with Guy Short (a political consultant for Bachmann, not RP2012) and Bachmann herself. *Id.*  Mr. Benton worked for Bachmann's adversary, certainly he is not likely to have any communications from or to her in his email account.  Sorenson most certainly would have such communications.  In addition, the warrant says the government would like to seize credit card transactions made by Sorenson, documents relating to Sorenson's 2011 or 2012 tax returns, and most telling, paragraph 10 of Section two states "communications between Kent Sorenson and the following individuals." *Id.*  There are no set of facts in the instant investigation that would provide probable cause to believe that  Mr. Benton's email would contain credit card statements or documents related to Sorenson's tax returns.  The government's affidavit in this case most certainly does not establish probable cause for this.

Then the plain reading of paragraph 10 indicates that the subject of the warrant was Sorenson, not Mr. Benton, because Mr. Benton's name is not listed in the opening sentence.  Mr. Benton has never met Wes Enos, much less had communications with him as the attachment

15

clearly proposes, since Enos worked for Bachmann.  *Id.*   Again, the government has no possible set of facts to establish probable cause to seize this information from Mr. Benton.  However, it is almost assured Sorenson was in possession of such communications.  Even read in the light most favorable to the government, it is clear this warrant was designed by the government to allow a fishing expedition with the expectation of simply grabbing all emails in Mr. Benton's account, which is revealed by the poorly drafted application.

The warrant, as drafted, is an unconstitutional general warrant that should be quashed. This Court must direct the government to narrow the scope of the Google search warrant if it is going to continue to pursue it, and then order Google to conduct its own internal search for responsive documents.  Then Google must ensure that only those documents actually described on the warrant with particularity are provided to the government.  The government should not be allowed to continue asking for a "dump" of an entire email account so it can rifle through an account at its own leisure and then rely on the "plain view doctrine" after the fact, to circumvent the requirements of the Fourth Amendment.

The government's warrant must be particularized as directed by the Constitution instead of seeking to rummage through Mr. Benton's emails with unfettered access to search, seize and retain irrelevant, non-responsive, and privileged material.  Accordingly, the court should issue an order quashing the search and seizure warrant issued to Google in the instant case.

2.     <u>The Search and Seizure Warrant Should Be Quashed Pursuant to 18 U.S.C. § 2704(b)(4) For Failure to Seek Communications Related to a Legitimate Investigation.</u>

Because the search and seizure warrant lacks probable cause, as discussed *supra*, it must be quashed pursuant to Section 2704(b)(4) of the Stored Wire and Electronic Communications Act ("Stored Communications Act").   *See*  18 U.S.C. § 2704(b)(4)(2014).   The Stored Communications Act requires the government, when seeking the content of electronically stored

16

communications, to submit to the service provider a court-ordered warrant. *Id.* at §2703.  Before the warrant can issue, however, the government must provide "specific and articulable facts showing that there are reasonable grounds to believe" the contents of the communications sought "are relevant and material to an ongoing criminal investigation." *Id.* at §2703(d).  Upon a challenge by a customer or subscriber alleging that the requested communications are not related to a legitimate investigation supported by probable cause, the court shall quash the warrant.  *Id.* at §2704(b)(4).[12]

As discussed above, the government could not have provided specific and articulable facts to this court to support the issuance of the warrant at issue because the material requested is neither material nor relevant to the government's investigation of Mr. Benton. The government has disclosed to Mr. Benton that it was actively investigating whether payments were made from RP2012 to Sorenson that were not reported to the FEC. *See* Howard Aff. at ¶ 10; *see also* Ex. B. Additionally, when counsel for Mr. Benton contacted Pilger to determine if Mr. Benton's efforts to comply with the grand jury subpoena were being duplicated by the warrant or were even necessary anymore, Pilger told counsel in no uncertain terms that the government expected Mr. Benton to continue to produce responsive documents from his Gmail account. Howard Aff. at ¶ 26.  Further, Pilger stated that Mr. Benton's efforts would not be duplicative of the legal process received by Google because that legal process was meant to allow the government access to communications which may have been deleted but were not accessible to Mr. Benton. *Id.*

---

[12]  In addition to allowing Google to recover costs for compliance with the warrant, the Stored Communications Act also allows the user to bring a civil action against the government to recover costs and reasonable attorneys' fees for willful or intentional violations of the statute. *See* 18 U.S.C. § 2707.  Moreover, § 2707(d) provides that if a court finds that "the circumstances surrounding the violation raise serious questions about whether or not an officer or employee of the United States acted willfully or intentionally, the department … shall, upon receipt of a true and correct copy of the decision and findings, … promptly initiate a proceeding to determine whether disciplinary action against the officer or the employee is warranted" and then inform the Inspector General with jurisdiction of its findings.  *See* §2707(d).

WAS:215083.9

However, Pilger's statements are not supported by information publicly available regarding Google's abilities to recover deleted materials.  Specifically, a simple search of Google, Inc.'s email retention policies and capabilities revealed that Google does not have the ability to recover email communications that have been "deleted forever" by the user.  *See* https://support.google.com/a/answer/112445?hl=en (last accessed on Sept. 2, 2014); also attached as Ex. H.  Further, Google only has the ability to recover deleted messages (which are in the "Trash" folder of a user's account) for 30 days.  *Id.*  Again, without having access to the affidavit provided by the government Mr. Benton cannot comment on the specific statements made therein, however, even if the government were only looking for messages that Mr. Benton deleted that *might* be relevant to its investigation, the applicable date range for such messages would only be the 30 days prior to Google receiving the warrant - approximately June 25, 2014 through July 25, 2014.  Further, the government, pursuant to §2703(d), needed to provide specific and articulable facts showing that the communications within this date range were relevant and *material* to its investigation. (emphasis added).  The government could not have established any probable cause to request Google disclose *all* of Mr. Benton's emails as it has in the instant case and it is practically impossible for Google to retrieve any of Mr. Benton's deleted emails beyond the end of June 2014.  Moreover, it is highly unlikely that Mr. Benton would have *any* emails in his Trash folder that are relevant to the government's investigation since Mr. Benton ceased working for RP2012 in August 2012.  Additionally, the information the government seeks *in fact is duplicative* of Mr. Benton's efforts to produce responsive documents from his Gmail account to the government since Mr. Benton is producing all responsive documents (including those in the Trash folder) from January 1, 2011 through June 23, 2014. *See* Ex. D.  Mr. Benton has also gone to great lengths and at substantial cost to obtain a copy of his

exceptionally large Gmail account, have it made into a searchable format which allows his counsel to separate unresponsive documents and so that the government can easily search the documents.   These efforts, should Google be required to repeat them, would be unduly burdensome and unnecessarily expensive given the amount of data at issue.

Moreover, the only information the government would likely get from Mr. Benton's Gmail Trash folder would be information related to Mr. Benton's work on Senator Mitch McConnell's re-election campaign and possibly, privileged communications with Mr. Benton's legal counsel.   Accordingly, since the search and seizure warrant issued to Google is not in compliance with §2703(d) and pursuant to §2704(b)(4), it should be quashed.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Benton respectfully requests this Court should issue an order quashing the search and seizure warrant issued on July 24, 2014 to Google.

Dated:  September 2, 2014                    Respectfully submitted by,

/S/ROSCOE C. HOWARD, JR.
Roscoe C. Howard, Jr., Esq.
Meena T. Sinfelt, Esq.
ANDREWS KURTH LLP
1350 I Street, NW, Suite 1100
Washington, D.C. 20005
Phone: (202) 662-2764
Facsimile: (202) 974-9544
Email: roscoehoward@andrewskurth.com
Email: meenasinfelt@andrewskurth.com

*Attorneys for Jesse R. Benton*

19